United States District Court
For the Northern District of California

1

2

3

4

5                                    **NOT FOR CITATION**

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   MARK BIGGINS, et al.,

11          Plaintiffs,                           No. 09-01272 JSW

12   v.                                           **ORDER ON MOTIONS TO**
                                                  **DISMISS AND TO STRIKE**
13   WELLS FARGO & COMPANY, et al.,

14          Defendants.

15   _____/

16                                    **INTRODUCTION**

17          This matter comes before the Court upon consideration of the Motion to Strike filed by

18   Wells Fargo & Company and Wells Fargo Bank, N.A., d/b/a America's Servicing Company

19   (Docket No. 135), a Joint Motion to Dismiss (the "Joint Motion") (Docket No. 132)[1], and the

20   motions to dismiss filed by: Homecomings Financial, LLC (Docket No. 122); GMAC Mortgage

21   LLC (Docket No. 123); Barclays Capital Real Estate Inc. d/b/a/ HomEq Servicing (Docket No.

22   126); FirstFed Financial Corporation and First Federal Bank of California (Docket No. 129); JP

23   Morgan Chase Bank N.A (Docket No. 130); and Aurora Loan Services LLC (Docket No. 137).

24   _____

25          [1]     The Joint Motion is filed on behalf of the following Defendants: Aurora Loan
     Services; Barclays Capital Real Estate Inc. d/b/a HomEq Servicing (sued herein as Barclays
26   Capital Real Estate Inc. d/b/a HomEq Servicing d/b/a The Money Store, Inc.); Bank of
     America N.A.; Consumer Solutions REO, LLC; Countrywide Home Loans, Inc.; FirstFed
27   Financial Corporation (erroneously sued as First Federal Financial Corporation); First
     Federal Bank of California; First Franklin Financial Corp.; GMAC Mortgage, LLC;
28   Homecomings Financial, LLC (sued herein as Homecomings Financial USA Corporation);
     Home Loan Services, Inc. d/b/a First Franklin Loan Services; JPMorgan Chase Bank, N.A.;
     Litton Loan Servicing LP; Provident Funding Associates, L.P.; Wells Fargo Bank, N.A. d/b/a
     America's Servicing Company (sued herein as America's Servicing Company); and Wells
     Fargo & Company.

1    Defendant Barclays Capital Real Estate Inc. d/b/a/ HomEq Servicing also moves to sever the

2    claims asserted against it.

3         The Court has considered the parties' papers, relevant legal authority, the record in this

4    case, and has had the benefit of oral argument.  The Court's rulings on the motions are set forth

5    in the remainder of this Order.

6                                           **BACKGROUND**

7         Plaintiffs are homeowners who, on behalf of themselves and a putative class, claim that

8    they "discovered that [they] were sold an exotic high cost adjustable rate mortgage (ARM) by [a

9    defendant] and/or its agent, subsidiary, parent, joint venturer or predecessor without

10   consideration of [their] ability to pay the loan's hidden maximum interest rate, which far

11   exceeded the initial teaser rate and made the loan unaffordable."  (Second Amended Complaint

12   ("SAC") ¶ 40; *see also* Plaintiffs' Affidavits attached to SAC.)[2]  Plaintiffs allege that they "were

13   not told that [they] would necessarily lose [their homes] when the teaser rate inevitably

14   increased beyond [their] ability to pay barring some unforeseeable and unlikely windfall

15   increase in income."  (*Id.*)

16        Plaintiffs further allege that, during the Class Period (March 10, 2005 through the

17   present), the Defendants "routinely and uniformly engaged in a pattern and practice of

18   knowingly offering substantially inferior and unaffordable subprime IO and Option ARM (i.e.

19   Negative Amortization Pick-A-Payment) mortgage products to elderly, minority and financially

20   distressed consumers with the intent of artificially inflating their earnings and without regard to

21   whether borrowers could repay the loans."  (*Id.* ¶ 41.)  Plaintiffs also allege that Defendants

22   "knowingly and affirmatively ***misrepresented*** the most important measurement of the

23   affordability of a mortgage product: ***the total amount of each monthly installment on the loan***

24   ***relative to the borrowers existing debt to income ratio***."  (*Id.* ¶ 33 (emphasis in original).)

25

26        [2]    The Court has recounted the procedural history of this action in its orders
     denying Plaintiffs' motions for temporary restraining orders.  (*See* Docket Nos. 5, 104.)  On
27   May 22, 2009, pursuant to the parties' stipulation, Plaintiffs filed the Second Amended
     Complaint, which is the operative pleading in this action.  (Docket Nos. 109, 111.)
28   Paragraph 40 consists of 21 separate paragraphs in which the named Plaintiffs purport to
     identify the Defendant or Defendants from whom they obtained a loan or loans.

United States District Court
For the Northern District of California

1  Plaintiffs contend that they have been damaged "by being evicted from their homes and

2  in other ways (some of which are not readily apparent at this time), including, but not limited to,

3  excessive fees, interest and other penalties and charges," and "by consenting to purchase loan

4  [sic] that only defendants knew were ultimately affordable [sic] under plaintiffs' existing debt to

5  income profile."[3]  (Id. ¶ 42.)

6  The Court addresses additional facts as necessary in the remainder of this Order.

7  **ANALYSIS**

8  **A.    Motion to Strike.**

9  **1.    Applicable Legal Standard.**

10  Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any

11  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

12  matter."  Immaterial matter "is that which has no essential or important relationship to the claim

13  for relief or the defenses being pleaded."  *California Dept. of Toxic Substance Control v. ALCO*

14  *Pacific, Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations

15  omitted).  Impertinent material "consists of statements that do not pertain, or are not necessary

16  to the issues in question."  *Id.*  "[M]otions to strike should not be granted unless it is clear that

17  the matter to be stricken could have no possible bearing on the subject matter of the litigation."

18  *Colaprico v. Sun Microsystems Inc.*, 758 F. Supp 1335, 1339 (N.D. Cal. 1991).  Ultimately, the

19  decision as to whether to strike allegations is a matter within the Court's discretion.  *Id.*

20  **2.    Analysis.**

21  Wells Fargo & Company ("Wells") and Wells Fargo Bank, N.A. d/b/a America's

22  Servicing Company ("ASC") move to strike paragraphs 16 and 35 on the grounds that they

23  quote non-evidentiary statements that are irrelevant to Plaintiffs' claims for relief.  Plaintiffs

24  allege that "defendants have engaged in a systematic and widespread predatory lending scheme

25  of offering substantially inferior mortgage products to elderly, minority and financially

26  impaired customers all the while secretly knowing with virtual certainty that the loans could

27

28  _____
[3]    In light of Plaintiffs' allegations, the Court presumes Plaintiffs intended to say Defendants knew the loans "were ultimately unaffordable."

3

never be re-paid by the homeowners." (SAC ¶ 16.)  Plaintiffs then quote from an unspecified document, which discusses a study by the National Community Reinvestment Coalition that purports to show that minority borrowers are more likely to receive high-cost loans.  (*Id.*) Wells and ASC argue that this paragraph is irrelevant, because Plaintiffs have not alleged a discrimination claim.  Plaintiffs are, for the most part, minorities and respond that such allegations demonstrate the egregious nature of Defendants' lending practices.  In light of the fact that the references to the study follow Plaintiffs' allegation that Defendants targeted minority homeowners, the Court cannot say that the allegations have no possible bearing on the subject matter of the litigation.  Accordingly, the motion to strike is denied in part on this basis.

In Paragraph 35, Plaintiffs quote a letter from a person who claims to be an employee of Wells Fargo Financial, in which he or she describes that entity's purported lending practices. Wells and ASC argue that the letter is inadmissible and also contend that it has no bearing on Plaintiffs' claims.  Wells Fargo Financial is not a named Defendant, and there is no factual basis in the SAC from which the Court could infer that Wells and ASC are its agent, alter-ego or that these entities are part of a joint venture, such that the conduct described in the letter could be attributable to Wells or ASC.  Accordingly, the Court grants, in part, the motion to strike on this basis.  The Court's ruling on this motion is not intended to express any opinion about the admissibility of these documents at a later stage in this litigation.

**Motions to Dismiss**

**A.    Dismissals on the Record.**

At the hearing on this matter, Plaintiffs Ray Jefferson, Febe Natividad and Buena Escano voluntarily dismissed all claims they asserted against the Defendants.  Pursuant to the allegations in the Second Amended Complaint ("SAC"), Jefferson asserted claims against Barclays Capital Real Estate Inc. d/b/a HomeEq Servicing ("Barclays") and Wells Fargo.  (SAC ¶ 40.)  Plaintiff Jefferson is the only named Plaintiff with claims asserted against Barclays specifically and, thus, is the only Plaintiff to have an alleged an injury that is traceable to

**United States District Court**
For the Northern District of California

Barclays.[4]  (*Id.*)  In contrast, there are other named Plaintiffs who allege claims against Wells Fargo, and the Court addresses those claims in the remainder of this Order.  Accordingly, Jefferson's claims against Barclays and Wells Fargo are dismissed with prejudice.  Barclays' motion to dismiss and to sever is denied as moot, and Barclays is hereby dismissed as a defendant.

Plaintiff Febe Natividad asserted claims against First Federal Bank of California ("FFBC") and against First Federal Financial Corporation, as the parent of FFBC (collectively "the First Federal Defendants").  (*Id.* ¶¶ 29, 40.)  Plaintiff Febe Natividad is the only named Plaintiff with claims asserted against the First Federal Defendants specifically and, thus, is the only Plaintiff to have alleged an injury that is traceable to the First Federal Defendants.[5]  Accordingly, Febe Natividad's claims against the First Federal Defendants are dismissed with prejudice, the First Federal Defendants' motion to dismiss is denied as moot, and they are dismissed as defendants.

Plaintiff Buena Escano asserted claims against GMAC Mortgage LLC ("GMACM"), Homecomings Financial LLC ("Homecomings"), apparently as a subsidiary of GMACM, and Aurora Loan Services LLC ("Aurora").  (SAC ¶¶ 28, 40.)  Ms. Escano is not the only named Plaintiff to have asserted claims against these Defendants.  (*See id.*)  Accordingly, all claims asserted by Ms. Escano against GMACM, Homecomings, and Aurora are dismissed with prejudice.  The Court addresses the claims asserted against these Defendants by other named Plaintiffs in the remainder of this Order.

**B.    Applicable Legal Standards.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  However, even

---

[4]    The Court's analysis with respect to Homecomings' and GMACM's motions to dismiss for lack of standing are equally applicable here.

[5]    *See* note 4, *supra*.

1   under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

2   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

3   conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

4   *Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S.

5   265, 286 (1986)).

6        Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

7   must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at

8   570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

9   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

10  *Ashcroft v. Iqbal*, 556 U.S. __, 2009 WL 1361536 at *12 (May 18, 2009) (citing *Twombly*, 550

11  U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for

12  more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads

13  facts that are merely consistent with a defendant's liability, it stops short of the line between

14  possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557)

15  (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court

16  should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton*

17  *Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

18  *Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

19        **1.    Requests for Judicial Notice.**

20        As general rule, the Court may not consider matters beyond the pleadings in ruling on a

21  motion to dismiss under Rule 12(b)(6). *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir.

22  1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.

23  2002) (citation omitted); *Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d

24  1542, 1555 n.19 (9th Cir. 1989). However, documents whose contents are referenced in a

25  complaint and whose authenticity no party questions are a proper subject of judicial notice.

26  *See, e.g.*, *Branch*, 14 F.3d at 454.

27        GMACM and Aurora filed Requests for Judicial Notice in connection with their

28  separate motions to dismiss. In addition, JPMorgan Chase Bank, N.A. ("Chase") asks the Court

*United States District Court*
For the Northern District of California

6

United States District Court

For the Northern District of California

to take judicial notice of Exhibit A to the Declaration of Stephen R. Meinertzhagen, which is a copy of a Purchase and Assumption Agreement between Chase and the Federal Deposit Insurance Corporation ("FDIC").  (*See* Docket No. 130 (Chase Motion at 4 n.2).)  Plaintiffs do not dispute that the Court may take judicial notice of reliable documents and public records and have objected to the requests for judicial notice only to the extent these Defendants purport to ask the Court to assume the truth of matters stated in those documents.

GMACM asks the Court to take judicial notice of Deeds of Trusts and accompanying Riders and Adjustable Rate Notes that were executed by Plaintiffs Chua and Flowers.  Aurora requests that the Court take judicial notice of Deeds of Trust and Riders, Adjustable Rate Notes and addenda, Notices of Assignment Sale or Transfer of Servicing Rights, a Notice of Default, and a Trustee's Deed Upon Sale relating to Plaintiffs Mendez and Walker.  Because these documents either are referenced in the SAC or are matters of public record, the Court GRANTS these requests.

The Purchase and Assumption Agreement attached as Exhibit A to the Meinertzhagen Declaration has been posted on the FDIC website, and Plaintiffs have not disputed its authenticity.  Accordingly, the Court takes judicial notice of that document as well.  Finally, Aurora asks that the Court take judicial notice of, *inter alia*, an Order from the Office of Thrift Supervision ("OTS") approving the application to establish operating subsidiaries, which identifies Aurora as an operating subsidiary of a federal savings assocation.  That order is available on the OTS website, and Plaintiffs have not disputed its authenticity.  Accordingly, the Court takes judicial notice of that document.

**The Joint Motion to Dismiss**

The Defendants jointly move to dismiss Plaintiffs' SAC on the following bases: (1) it fails to satisfy Rule 8(a)'s pleading requirements; (2) it fails to satisfy Rule 9(b)'s pleading requirements; (3) and each of the individual claims for relief fails to state a claim on which relief can be granted.

//

//

7

**A.     Rule 8(a).**

Federal Rule of Civil Procedure 8(a) requires, *inter alia*, that a plaintiff set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Defendants complain that Plaintiffs' complaint is overly vague. For example, Defendants contend that Plaintiffs do not specify which loan terms are objectionable and which loan modification terms are objectionable. (Joint Motion at 5:7-17.)[6] One purpose of Rule 8(a) is to put a defendant on fair notice of the nature of the claims that are asserted against it and the grounds upon which those claims rest. *Twombly*, 550 U.S. at 555. Plaintiffs' allegations are sufficient to put the Defendants on notice of the nature of the claims asserted against them. Therefore, to the extent the Defendants seek to dismiss the SAC based solely on violations of Rule 8(a), the Court denies the Joint Motion in part on this basis. However, the Court shall address where greater specificity is required in the remainder of this Order, if Plaintiffs choose to amend.

**B.     Rule 9(b).**

Defendants move to dismiss Plaintiffs' first, second, third, fifth, seventh, and eighth claims for relief on the basis that they fail to allege fraud with particularity. According to Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In addition, a claim "grounded in fraud" may be subject to Rule 9(b)'s heightened pleading requirements. A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). However, Rule 9(b)'s particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8's requirement of a "short and plain" statement of the claim. Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess,* 317 F.3d at

---

[6]     Defendants also argue that the SAC should be dismissed for failure to comply with Rule 8(a), because it contains conclusions, rather than facts that support those conclusions. The Court addresses that argument in connection with Defendants' arguments on the individual claims for relief.

United States District Court

For the Northern District of California

1106.[7]  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Plaintiffs' second and third claims for relief are premised expressly on fraudulent conduct relating to affirmative misrepresentations and alleged non-disclosures or concealments.[8]  To state a claim for fraud based on an affirmative misrepresentation, a plaintiff must allege that: (1) a defendant made a false representation; (2) the defendant knew the representation was false; (3) the defendant intended to induce the plaintiff's reliance on the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff was damaged.  *See, e.g. Crocker-Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 636-37 (9th Cir. 1977); *Engalla v. Permanente Medical Group*, 15 Cal. 4th 951, 974 (1997).  To state a claim for fraud based on nondisclosure, a plaintiff must allege "(1) the defendant failed to disclose a material fact which he knew or believed to be true; and (2) the defendant had a duty to disclose that fact. ... The duty to disclose arises when ...: (1) the material fact is known to (or accessible only to) the defendant; and (2) the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact."  *San Diego Hospice v. County of San Diego*, 31 Cal. App. 4th 1048, 1055 (1995) (internal citations omitted).

Plaintiffs allege, *inter alia*, that the "Defendants" misrepresented that their mortgage products were affordable and that Plaintiffs could easily refinance the loans at the end of the teaser rate period.  Plaintiffs also allege that the Defendants did not adequately disclose to them

---

[7]     Plaintiffs argue that Rule 9(b)'s requirements should be relaxed.  The pleading requirements of Rule 9(b) "may be relaxed with respect to matters within the opposing party's knowledge."  *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993).  Based on the facts currently alleged in the SAC, the Court cannot say Rule 9(b)'s requirements should be relaxed in this case.  Moreover, Plaintiffs have not identified any matters that would fall solely within Defendants' knowledge.

[8]     Defendants also move to dismiss Counts II and III on the basis that the alleged misrepresentation regarding the "affordability" of a loan is a non-actionable statement of opinion and on the basis that the alleged concealments are disclosed on the face of the loan documents.  Because the Court dismisses these claims for failing to comply with Rule 9(b), the Court does not address these arguments.  Defendants are free to renew the arguments in connection with any subsequent motion to dismiss.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   that their loans would become unaffordable and that they would lose their homes.  (*See, e.g.,*

2   SAC ¶¶ 4-5, 40, 41, 46(e), 60, 65-66.)  These allegations do set forth the alleged

3   misrepresentations and also set forth the facts allegedly concealed from Plaintiffs, and Plaintiffs

4   allege why there were false.  Plaintiffs also allege that Defendants "misrepresented the most

5   important measurement of the affordability of a mortgage product: the total amount of each

6   monthly installment on the loan relative to the borrowers' existing debt to income ratio."  (SAC

7   ¶ 33.)  Plaintiffs do not, however, allege facts to show why this statement was false.

8          As to each of the foregoing statements, concealments or non-disclosures, Plaintiffs also

9   do not set forth when the conduct occurred.  If these actions occurred at the inception of the

10  loan, Plaintiffs presumably know the approximate dates on which they entered into a loan and

11  should allege those facts.  Similarly, Plaintiffs do not allege where the alleged statements were

12  made, *i.e.* in a Plaintiff's home or at a Defendant's office.  Again, these are facts that,

13  presumably, are within the Plaintiffs' knowledge.  Finally, even if the Plaintiffs do not have

14  specific facts as to the name of a particular employee who sold them a loan, each named

15  Plaintiff must clearly identify the Defendant who is alleged to have made a representation to

16  them and the basis on which the person making the representation had the authority to act for

17  that Defendant.  *See, e.g., Alicea v. GE Money Bank*, 2009 WL 1776703 at *6-*7 (N.D. Cal.

18  June 18, 2009).

19         Plaintiffs also make general allegations that Defendants "deceiv[ed] plaintiffs and other

20  homeowners about the material terms, conditions, and benefits associated with certain 'high

21  cost' sub-prime mortgage products."  (*See, e.g.,* SAC ¶ 15, ¶ 46(a) ("defendants routinely and

22  intentionally mislead class members about the terms, conditions and benefits of their mortgage

23  loan products, including, but not limited to the long-term consequences" of the products); ¶ 66

24  (defendants "actively [concealed] ... material facts concerning the unaffordable nature of these

25  mortgages and the ultimate lack of substantial benefit to borrowers").)  These general

26  allegations about material terms and conditions also are insufficient to satisfy Rule 9(b)'s

27  requirements.  *See, e.g. Walker v. 1 Equity Lenders Group*, 2009 WL 1364430 at *8 (S.D. Cal.

28  May 14, 2009).

United States District Court

For the Northern District of California

1    Plaintiffs' allegations of affirmative misrepresentations, concealments and non-

2 disclosures permeate their claims for breach of the implied covenant of good faith and fair

3 dealing, violations of Section 17200, and unjust enrichment.  (*See, e.g.,* ¶¶ 53, 83-84, 93, 94(a),

4 94(b), 102.)  The Court finds that these claims are grounded in fraud and fail to satisfy the

5 requirements of Rule 9(b).  *See, e.g., Alicea*, 2009 WL 1766703 at *8.

6    Accordingly, the Joint Motion is granted in part on this basis.  Plaintiffs are granted

7 leave to amend, but they must comply with the requirements of Rule 9(b) as to each of these

8 claims.  Specifically, Plaintiffs must identify which terms, conditions or benefits allegedly were

9 misrepresented to or concealed from them, where and when that conduct occurred, and which

10 particular Defendant was responsible for making a particular representation to each named

11 Plaintiff.  *See, e.g., Schwartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  Further, to

12 the extent Plaintiffs premise their claims on non-disclosures, if they choose to amend, they must

13 allege facts sufficient to establish that the Defendants had a duty to make such disclosures.

14 **C.    Individual Claims for Relief.**

15    **1.    The Claim for Breach of Implied Covenant of Good Faith and Fair Dealing
        Is Dismissed, With Leave to Amend.**

16

17    Defendants move to dismiss this claim on the basis that a lender has no special duty to

18 its borrower.  It is unclear to the Court whether Plaintiffs intend to assert a claim for tortious

19 breach of the implied covenant of good faith and fair dealing.  If that was Plaintiffs' intent, the

20 claim fails.  "[A]s a general rule, a financial institution owes no duty of care to a borrower when

21 the institution's involvement in the loan transaction does not exceed the scope of its

22 conventional rule as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Ass'n*,

23 231 Cal. App. 3d 1089, 1096 (1991); *cf. Marks v. Ocwen Loan Servicing, LLC*, 2008 WL

24 344210 at *6 (N.D. Cal. Feb. 6, 2008) (dismissing negligence based claims for failing to allege

25 facts establishing that defendant owed plaintiff a duty).  In this case, Plaintiffs do not allege

26 facts demonstrating that any Defendants' involvement in the loan transaction exceeded the

27 scope of its conventional role as a mere lender of money or that they otherwise owed a duty to

28 Plaintiffs.

United States District Court

For the Northern District of California

If Plaintiffs premise this claim on a contract theory, it also fails.  Plaintiffs' allegations suggest that any alleged breach occurred when they were negotiating their loans, *i.e.* before any particular Plaintiff entered into a contract with a particular Defendant.  "[T]he implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement."  *McClain v. Octagon Plaza, LLC,* 159 Cal. App. 4th 784, 789 (2008) (citing *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1031-35 (1992)).  Because Plaintiffs' allegations pertain to conduct that occurred during the negotiation of the loans, they fail to state a claim.  *McClain*, 159 Cal. App. 4th at 789; *see also Alicea*, 2009 WL 1766703 at *4 (dismissing breach of the implied covenant of good faith and fair dealing claim, with leave to amend, on the basis that allegations related to pre-contractual negotiations); *Marks v. Chicoine*, 2007 WL 1056779 at *4-*5 (N.D. Cal. April 6, 2007) (dismissing, with leave to amend, claims for breach of the implied covenant of good faith and fair dealing based on alleged oral contract).

Accordingly, the Joint Motion is granted in part on this basis.  Because the Court cannot say there are no facts on which Plaintiffs could state a claim for breach of the implied covenant of good faith and fair dealing, they shall be granted leave to amend this claim.

**2.      The Claim for Violations of the Home Ownership Equity Protection Act ("HOEPA") Is Dismissed, With Leave to Amend, In Part.**

HOEPA was enacted to supplement the Truth in Lending Act ("TILA"), and it requires specific disclosure obligations and substantive requirements on certain categories of high-cost mortgages.  15 U.S.C. §§ 1602(aa), 1639.  Defendants move to dismiss this claim on the basis that Plaintiffs have not alleged facts to show that their loans are "covered loans," which are defined as:

> a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if-
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor;

United States District Court

For the Northern District of California

1    or (B) the total points and fees payable by the consumer at or before closing
     will exceed the greater of-

2

3    (i) 8 percent of the total loan amount; or (ii) $ 400.

4    15 U.S.C. § 1602(aa).

5        Plaintiffs allege that they "were required to pay excessive fees, expenses, and costs

6    which exceeded more than 10% of the amount financed."  (SAC ¶ 76.)  This allegation is not

7    sufficient to establish that Plaintiffs' loans are covered under HOEPA.  *See Marks*, 2007 WL

8    1056779 at *7.  Plaintiffs argue that they have stated a claim based on the allegation that

9    Defendants failed to include the maximum monthly payment based on the maximum interest

10   rate allowed.  (*See* Opp. Br. at 28:14-22; SAC ¶ 77.)  However, because Plaintiffs have not

11   alleged facts demonstrating that HOEPA applies to their loans, these allegations are insufficient

12   to state a claim.  Accordingly, the Joint Motion is granted in part on this basis.

13       For reasons set forth below in connection with Aurora's motion to dismiss, the Court

14   shall grant Plaintiffs leave to amend their HOEPA claim, except as to Aurora.  However, each

15   Plaintiff must allege facts demonstrating that their loan or loans are covered by HOEPA.

16       **3.      The Claims for Violations of Financial Code § 22302(b) and Civil Code §
             1670.5 Are Dismissed, With Leave to Amend Within the Section 17200
17           Claim.**

18       Civil Code § 1670.5 "applies to the provisions of a loan contract that is subject to" the

19   California Finance Lenders Law.  Cal. Fin. Code § 22302(a).  Section 22302(b) further provides

20   that "[a] loan found to be unconscionable pursuant to Section 1670.5 of the Civil Code shall be

21   deemed to be in violation of this division and subject to the remedies specified in this division."

22   Civil Code § 1670.5, in turn, provides that if a court finds, as a matter of law, that a contract, or

23   any provision thereof, is unconscionable, it may "refuse to enforce the contract, or it may

24   enforce the remainder of the contract without the unconscionable clause, or it may so limit the

25   application of any unconscionable clause as to avoid any unconscionable result."

26       Plaintiffs allege that "the hidden terms specifying that the loans would reset multiple

27   times - are onerous to the point of being unconscionable," and allege that they rely on Financial

28   Code § 22302(b) solely as a basis to support their allegation that Defendants' conduct is

United States District Court

For the Northern District of California

unlawful under Section 17200.  (SAC ¶¶ 84-85.)[9]  Defendants argue that the former allegation is insufficient to state a claim because "nothing about a loan's adjustable rate being reset monthly" shocks the conscience.  (Joint Mot. at 13:5-7.)  However, a determination of whether specified provisions of the loan documents shock the conscience requires an examination of facts that are not amenable to resolution on a motion to dismiss.  Nonetheless, the claim must be dismissed, because the allegation that "the hidden terms specifying that the loans would reset multiple times - are onerous to the point of being unconscionable" is a bare legal conclusion unsupported by facts.  *Twombly*, 550 U.S. at 555.  Accordingly, the Joint Motion is granted in part on this basis.

Because the Court cannot say there are no facts that would support Plaintiffs' allegations that the loan provisions are unconscionable, Plaintiffs shall have leave to amend.  However, if Plaintiffs choose to amend, they should not allege this claim as a stand-alone claim for relief and should include it only within their Section 17200 Claim.

### 4.     The Claim for Violations of Civil Code § 2923.6 Is Dismissed, With Leave to Amend Within the Section 17200 Claim.

Civil Code § 2923.6 provides:

(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreement is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recover through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification is consistent with its contractual or other authority.

Defendants move to dismiss this claim on the basis that it does not provide a private right of action.  Plaintiffs concede that they do not assert a separate claim for violations of this statute and assert it only as a basis on which to allege violations of Section 17200.  (*See* Opp.

---

[9]     If there are other terms of the loans that Plaintiffs allege are unconscionable, Plaintiffs have not adequately identified those provisions.

United States District Court

For the Northern District of California

1  Br. at 32:24-28.)  Defendants respond that Plaintiffs cannot premise their Section 17200 claim

2  on violations of Section 2923.6, because the statute does not create such a duty between lenders

3  or servicers and borrowers.

4         Defendants rely on *Pittman v. Barclays Capital Real Estate, Inc.*, 2009 WL 1108889

5  (S.D. Cal. April 24, 2009) and *Farner v. Countrywide Home Loans*, 2009 WL 189025 (S.D.

6  Cal. Jan. 26, 2009) in support of their argument.  *Pittman*, 2009 WL 1108889 at *3 (dismissing

7  stand-alone claim and Section 17200 claim premised upon alleged violations of Section

8  2923.6); *Farner*, 2009 WL 189025 at *2; *see also Paek v. Plaza Home Mortg., Inc.*, 2009 WL

9  1668576 at * 3 (C.D. Cal. June 15, 2009).  None of those cases discuss the import of subsection

10 (b) of Section 2923.6.  In addition, it is not clear from the Legislative history whether

11 subsection (b) applies only if a modification or workout plan was consistent with a lender's

12 pooling and servicing agreement or whether it was intended to refer to other contractual

13 relationships.  *See* 2008 Cal. Legis. Serv. Ch. 69 (S.B. 1137) (West).  The Court, therefore,

14 declines to follow the reasoning in *Pittman, Farner*, and *Paek*.  As such, at this stage and on this

15 record, the Court cannot say as a matter of law that Plaintiffs could not allege a Section 17200

16 claim premised on allege violations of Civil Code § 2923.6(b).  However, if Plaintiffs choose to

17 amend, they should not allege this claim as a stand-alone claim for relief and should include it

18 only within their Section 17200 Claim.  The Joint Motion is denied in part on this basis.

19        **5.     The Section 17200 Claim Is Dismissed, With Leave to Amend.**

20        Plaintiffs' Section 17200 claim relies upon the facts supporting their first through fifth

21 and seventh claims for relief.  The Court concluded that Plaintiffs have either failed to allege

22 these claims with the requisite specificity or have failed to allege facts sufficient to state a

23 claim.  Although to the extent Plaintiffs have relied on Civil Code § 2923.6 to support this

24 claim, the Court shall dismiss it with leave to amend on terms consistent with the Court's

25 rulings set forth above.  The Joint Motion is granted in part and denied in part on this basis.

26 **C.     Aiding and Abetting Claims Against Servicers.**

27        The Court also addresses Plaintiffs' argument, raised in opposition, that the Defendants

28 who are alleged to be loan servicers can be held liable for conduct occurring at the time the

1    loans were originated on an aiding and abetting theory.  (Opp. Br. at 35:9-36:12.)  Under

2    California law, a defendant may be held liable for aiding and abetting a tort.  *See Casey v. U.S.*

3    *Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).  To prevail on such a claim,

4    however, a plaintiff must establish that the defendant "(a) knows the other's conduct constitutes

5    a breach of duty and gives substantial assistance or encouragement to the other to so act or (b)

6    gives substantial assistance to the other in accomplishing a tortious result and the person's own

7    conduct, separately considered, constitutes a breach of duty to the third person."  *Id.*  Plaintiffs,

8    however, have failed to allege facts to support this theory.  Accordingly, if they intend to pursue

9    origination claims against servicers and if Plaintiffs choose to amend, they must allege facts

10   demonstrating that the servicer Defendants had actual knowledge of the underlying torts and

11   intended to facilitate the commission of those torts.  *Id.* at 1145-47.

**The Individual Motions to Dismiss**

13   Having resolved those issues that are common to all Defendants, the Court turns to the

14   remaining separately filed motions to dismiss.

15   **A.    The Claims Against Homecomings and GMACM Are Dismissed For Lack of**
         **Standing, With Leave to Amend.**

17   Defendants Homecomings Financial, LLC ("Homecomings") and GMACM move to

18   dismiss all claims asserted against them on the basis that Plaintiffs have failed to allege facts

19   demonstrating that they have standing.  To establish Article III standing, a plaintiff must

20   demonstrate (1) she has suffered a personal injury or suffers the threat of injury, (2) the alleged

21   injury is fairly traceable to the defendant's conduct, and (3) that the injury would likely be

22   redressed by the requested relief.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

23   (1992).

24   Plaintiffs allege that "GMAC is the parent company or is otherwise affiliated with

25   Homecomings Financial in a manner that makes it at least a joint venture regarding loans issued

26   or serviced by Homecomings."  (SAC ¶ 28.)[10]  "It is a general principle of corporate law deeply

_____

28   [10]    Paragraph 28 is the only paragraph in the SAC that refers specifically to
Homecomings.

16

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  None of the named Plaintiffs allege that they received a loan from Homecomings or that Homecomings is servicing their loans.  (*See* SAC ¶ 40.)  To establish their claims against Homecomings, Plaintiffs rely on the fact that they allege that all of the named Defendants engaged in the conduct alleged and caused each of them injury.  (*See* Opp. Br. at 16:19-17:18, 40:6-18.)  The Court finds that these generally allegations, without more, are insufficient to establish that any named Plaintiff suffered an injury that is traceable to Homecomings.  Plaintiffs Chua and Flowers allege that Homecomings is an "agent, subsidiary, parent, joint venturer or predecessor," of GMACM.  However, those allegations are nothing more than bare legal conclusions, which the Court need not accept as true.  *Twombly*, 550 U.S. at 555.  Accordingly, none of the named Plaintiffs have alleged facts sufficient to establish that they have standing to pursue claims against Homecomings.  Homecomings' motion is granted.

As noted, Plaintiffs Chua and Flowers allege that they were sold loans by GMACM "and/or its agent, subsidiary, parent, joint venturer or predecessor."  (SAC ¶¶ 28, 40.)  GMACM, however, submits Deeds of Trust and Adjustable Rate Notes relating to these Plaintiffs' loans, which show that GreenPoint Mortgage Funding, Inc. was the lender on Chua's loan and that Loan Center of California, Inc. and Banyan Financial Group were the lenders on Flowers' loans.  (GMACM RJN, Exs. 1-7.)  There are no facts in either the SAC or these Plaintiffs' affidavits to support their allegations that these entities were the agents, subsidiaries, parents, joint venturers or predecessors of GMACM.  *Twombly*, 550 U.S. at 555.  Further, to the extent the remaining Plaintiffs rely on the general allegations that Defendants caused them injury, those facts are insufficient to establish that they suffered an injury that is traceable to GMACM.  Accordingly, the Court concludes that Plaintiffs have not alleged facts sufficient to

1   establish that they have standing to pursue claims against GMACM.  GMACM's motion is

2   granted in part on this basis.[11]

3        Because the Court cannot say that Plaintiffs Chua and Flowers could not allege facts to

4   establish that they have standing to pursue claims against Homecomings or GMACM, they shall

5   be given leave to amend these claims on the terms set forth in this Order.

6   **B.      Plaintiffs' Claims Against JPMorgan Chase Bank, N.A. Are Dismissed, Without Leave to Amend.**

7

8        Plaintiffs Leblanc, Mendez and Nguyen assert claims against Chase on the basis that

9   they obtained loans from Chase/Washington Mutual Bank ("WaMu") "and/or its agent,

10  subsidary, parent, joint venturer or predecessor...."  (SAC ¶ 40; Leblanc Affidavit ¶ 5; Mendez

11  Affidavit ¶ 5; Nguyen Affidavit ¶ 5.)  Plaintiffs also generally allege that "Chase is the parent

12  company or is otherwise affiliated with WaMu in a manner that makes it the successor in

13  interest to the ill-gotten gains from WaMu's wrongful conduct."  (SAC ¶ 19.)  Chase moves to

14  dismiss all claims on the basis that it did not acquire any of WaMu's liabilities with respect to

15  borrower claims when it acquired certain of WaMu's assets and liabilities.

16       In support of this argument, Chase submits the Purchase and Assumption Agreement

17  dated September 25, 2008.  (Meinertzhagen Decl., Ex. A.)  Section 2.5 of that agreement states:

18       Notwithstanding anything to the contrary in this Agreement, any liability
         associated with borrower claims for payment of or liability to any borrower
19       for monetary relief, or that provide for any other form of relief to any
         borrower, whether or not such liability is reduced to judgment, liquidated or
20       unliquidated, fixed or contingent, matured or unmatured, disputed or
         undisputed, legal or equitable, judicial or extra-judicial, secured or
21       unsecured, whether asserted affirmatively or defensively, related in any way
         to any loan or commitment to lend made by the Failed Bank [WaMu] prior
22       to failure, or to any loan made by a third party in connection with a loan
         which is or was held by the Failed Bank, or otherwise arising in connection
23       with the Failed Bank's lending or loan purchase activities are specifically ***not
         assumed*** by the Assuming Bank [Chase].

24

25  (*Id.*, Ex. A (emphasis added).)

26  ───────────────

27       [11]     GMACM also moves to dismiss for each of Plaintiffs' claims for failure to
    state a claim because it did not act as a lender and the allegations regarding aiding and
28  abetting against the servicers are insufficient.  (Docket No. 123 (Mot. at 7:3-8:17); Docket
    No. 159 (Reply Br. at 2:16-4:3).)  The Court has addressed that argument in connection with
    the Joint Motion.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Chase argues that, based on the plain language of the Purchase and Assumption Agreement, any liabilities relating to these three Plaintiffs' loans were not assumed by Chase. Plaintiffs do not dispute that Chase did not originate their loans.[12]  Plaintiffs oppose Chase's motion on the basis that "if these contracts were induced by fraud, Chase has nothing upon which it can enforce a right to collect payment."  (Opp. Br. at 38:18-20.)  That argument does not, however, address the effect of Section 2.5 of Purchase and Assumption Agreement. Plaintiffs also rely on *Provident Bank v. Community Home Mortgage Corp.*, 458 F. Supp. 558 (E.D.N.Y. 2007).  However, the issue in that case was a dispute over which of two entities owned certain mortgage loans, when the entity that originated the mortgages made two copies of each mortgage and note and subsequently assigned the loan to both entities.  The court resolved the issue of who owned the loans in question, in part by relying on principles relating to holders in due course.  The facts in the *Provident Bank* case are inapplicable here.  The claims asserted by Plaintiffs Leblanc, Mendez and Nguyen fall within Section 2.5 of the Purchase and Assumption Agreement and, thus, any liabilities associated with those were not assumed by Chase.  All claims against Chase are dismissed on this basis.  To the extent the Court has granted Plaintiffs leave to amend, Plaintiffs Leblanc, Nguyen and Mendez shall have leave to amend to assert their claims against the FDIC.

Plaintiffs also asserted at the hearing that Chase is liable as a servicer of loans. However, none of the named Plaintiffs allege that Chase serviced their loans.  At the hearing on this matter, the Court inquired what, if any, facts Plaintiffs could assert against Chase in an amended complaint.  (Docket No. 168 (Notice of Tentative Ruling, Question 5.d).)  Plaintiffs failed to articulate any such facts and failed to identify any named Plaintiff whose loan is alleged to have been serviced by Chase.  Accordingly, the Court dismisses Chase as a defendant, without leave to amend.

---

[12]   At the hearing, Chase asserted that Plaintiffs Nguyen and Leblanc had attached documents pertaining to their loans to their affidavits, which establish that Chase was not the original lender.  Those documents, however, were not included with the copy of the SAC filed with the Court.  Because Plaintiffs Nguyen, Mendez and Leblanc do not dispute that Chase was not the original lender on their loans, the failure to file the exhibits to the Nguyen and Leblanc affidavits does not affect the Court's analysis.

**United States District Court**
For the Northern District of California

**C.     Plaintiffs' Claims Against Aurora Are Dismissed, With Leave to Amend.**

Aurora also moves to dismiss Plaintiffs' claims on the basis that the claims are preempted and moves to dismiss the HOEPA claim on the basis that it is barred by the statute of limitations.[13]

**1.     Preemption.**

Aurora, as the subsidiary of a federal savings association, moves to dismiss Plaintiffs' first, second, third, fifth, sixth, seventh and eighth claims for relief on the basis that each of these claims are preempted by the Home Owners Loan Act of 1933 ("HOLA").[14] "Through HOLA, Congress gave the Office of Thrift Supervision ('OTS') broad authority to issue regulations governing thrifts. ... As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2." *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).  Section 560.2 reads, *inter alia*:

> OTS hereby occupies the entire field of lending regulation for federal savings associations.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

12 C.F.R. § 560.2(a).[15]  Section 560.2(b) lists specific types of state laws that are preempted, including

> state laws that purport to impose requirements regarding:

> (3) Loan-to value ratios;

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable on the passage of time or a specified event external to the loan;

---

[13]     Aurora also moved to dismiss each of Plaintiffs' claims for failure to state a claim.  (Docket 137 (Mot. at 5:14-7:9, 7:22- 10:18).)  The Court has addressed those arguments in connection with the Joint Motion.

[14]     Plaintiffs do not dispute Aurora's status as a subsidiary of a federal savings association.

[15]     "Federal regulations have no less preemptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees; ...

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applications; [and]

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in mortgages[.]

12 C.F.R. § 560.2(b). Section 560.2(c) sets forth certain types of state laws that are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of" Section 560.2(a), including contract, commercial law and tort law. *Id.* § 560.2(c).

In *Silvas*, the Ninth Circuit set forth the analysis to follow in order to determine whether a state law is preempted. First, a court should determine whether the law is the type of law listed in Section 560.2(b). If it is, the analysis ends, and the law is preempted. *See Silvas*, 514 F.3d at 1005 (quoting OTS Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996)). If the law in question is not listed in Section 560.2(b), a court should determine whether the law affects lending. If the answer is yes, then, pursuant to Section 560.2(a), a presumption arises that the law is preempted. *Id.* "This presumption can be reversed if the law can clearly be shown to fit within the confines of paragraph (c)," which is to be interpreted narrowly and doubts should be resolved in favor of preemption. *Id.*

Although Plaintiffs' first, second, third, seventh and eighth claims for relief are premised upon state laws of general applicability, "that is [they do] not purport to directly regulate the conduct of mortgage lenders," those claims still "may be preempted by HOLA if, 'as applied,' [they are] a type of state law that falls within § 560.2." *Munoz v. Financial Freedom Senior Funding Corp.*, 573 F. Supp. 2d 1275, 1280 (C.D. Cal. 2008) (citing, *inter alia*, *Silvas*, 514 F.3d at 1006).

1    The remaining named Plaintiffs with links to Aurora are Remy Mendez and Karen

2    Fomby.[16]  Aurora did not originate either of the loans associated with these Plaintiffs' property.

3    (*See* Docket No. 137-1 (Aurora RJN, Exs. 1-2 , 7-8).)  The Court has determined Plaintiff has

4    not alleged facts sufficient to hold Aurora liable for origination based claims on an aiding and

5    abetting theory.  As currently drafted, the SAC is not sufficiently detailed to determine whether

6    the first, second, third, fifth, seventh and eighth claims for relief would be preempted as to

7    Aurora, and the Court denies in part the motion on this basis.  However, the Court notes that

8    many of Plaintiffs' allegations relating to the breach of implied covenant, fraud and Section

9    17200, and unjust enrichment claims are premised upon allegations that the Defendants did not

10   adequately disclose certain information to them.  (*See, e.g.,* SAC ¶¶ 4-5, 37, 40-41, 53, 66, 83-

11   84.)  Courts within this District and other Districts within California have concluded that state

12   law claims based on such allegations are preempted.  *See, e.g., Spears v. Washington Mutual,*

13   *Inc.*, 2009 WL 605835 at * 5-*6 (N.D. Cal. March 9, 2009); *Andrade v. Wachovia Mortgage,*

14   *FSB,* 2009 WL 1111182 at *2-*3 (S.D. Cal. Apr. 21, 2009); *Cosio v. Simental,* 2009 WL

15   201827 at *5 (C.D. Cal. Jan. 27, 2009); *Nava v. Virtualbank*, 2008 WL 2873406 at *5-6 (E.D.

16   Cal. July 16, 2008).

17   In contrast, if the factual basis for Plaintiffs general allegations that Defendants

18   misrepresented material terms or benefits of the loans is, for example, that a Defendant

19   represented to a Plaintiff that the interest rate on a loan would be 5%, when in fact the interest

20   rate was actually 7%, such an allegation might "fall[] more on ... the common law side of the

21   ledger," and would not be preempted.  *Ayala v. World Savings Bank, FSB*, 2009 WL 1364363 at

22   * 5 (C.D. Cal. May 4, 2009) (concluding that slander of title claim was not preempted but that

23   claims for quiet title and fraud were preempted).  Plaintiffs should pay careful attention to these

24   and other authorities as they amend any of these claims against Aurora.

25   The only claim for relief in the SAC that directly implicates servicer activities is Count

26   VI, in which Plaintiffs allege that "Defendants have routinely refused to discuss good faith

27

28   _____

[16]    Ms. Fomby is the daughter of deceased borrower Ruth Walker and alleges
that she inherited Ms. Walker's property.  (SAC ¶ 40.)

modifications of" their loans in violation of California Civil Code § 2923.6.  That law specifically refers to loan modifications and references that duties servicers may owe to parties in a loan pool.  To the extent this Plaintiffs' premise their Section 17200 claim against Aurora on a violation of this law, it directly implicates § 560(b)(10), which preempts state laws relating to "processing, origination, servicing, sale or purchase of, or investment or participation in mortgages."  Accordingly, the Court concludes that this aspect of Plaintiffs' Section 17200 claim against Aurora is preempted.  If they choose to amend, Plaintiffs shall not proceed against Aurora on this theory.

Accordingly, Aurora's motion is granted in part and denied in part.

**2.      The HOEPA Claim Against Aurora Is Barred by the Statute of Limitations**.

Aurora also moves to dismiss the HOEPA claim asserted by Plaintiffs Mendez and Fomby on the basis that they are time barred.  Plaintiffs have not alleged facts demonstrating that Aurora is liable for conduct that occurred at the origination of the loans.  However, because the Court concludes that it would be futile for Plaintiffs Mendez and Walker to amend their HOEPA claims against Aurora, the Court addresses this argument.

HOEPA claims are governed by TILA's one year statute of limitations.  15 U.S.C. § 1640(e).  Based on the record before the Court, Mendez and Fomby obtained loans on or about July 23, 2007 and June 23, 2006, respectively.  Thus, the statute of limitations expired well before these Plaintiffs filed the complaints in this action.  Plaintiffs argue that the statute of limitations should be equitably tolled, because they did not discover the alleged violations within the one year period.  In opposition to motion, Plaintiffs argued that the statute of limitations began to run when the initial teaser rate expired.  Under that theory, the HOEPA claims asserted by Mendez and Fomby still are untimely, because the teaser rates on their loans expired on or about September 1, 2007 and August 1, 2006, respectively. At the hearing, Plaintiffs argued that the statute began to run when they learned, through counsel, of the problems associated with their loans.  The Court finds that theory entirely without merit.  Accordingly, the Court concludes that Plaintiffs Fomby and Mendez shall not amend their HOEPA claim against Aurora.  Aurora's motion is granted in part on that basis.

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court:

1.      Grants in part and denies in part the motion to strike (Docket No. 135).  Plaintiffs shall not include the material set forth in paragraph 35 in the amended complaint permitted by this Order.

2.      Denies as moot Barclays' motion to dismiss or in the alternative to sever (Docket No. 126).

3.      Denies as moot the First Federal Defendants' motion to dismiss (Docket No. 129).

4.      Grants in part and denies in part the Joint Motion (Docket No. 132), with leave to amend on the terms set forth in this Order.

5.      Grants Homecomings' motion to dismiss (Docket No. 122), with leave to amend on the terms set forth in this Order.

6.      Grants in part and denies in part GMACM's motion to dismiss (Docket No. 123), with leave to amend on the terms set forth in this Order.

7.      Grants Chase's motion to dismiss (Docket No. 130), without leave to amend as to Chase.  However, Plaintiffs Leblanc, Mendez and Nguyen may amend, on the terms set forth in this Order, and assert their claims against the FDIC.

8.      Grants in part and denies in part Aurora's motion to dismiss (Docket No. 137), with leave to amend on the terms set forth in this Order.

9.      Barclays Capital Real Estate Inc., d/b/a HomEq Servicing, First Federal Financial Corporation, First Federal Bank of California, and JPMorgan Chase Bank N.A. are dismissed as defendants, without leave to amend.

10.     Plaintiffs are granted leave to amend to file a third amended complaint by no later than August 26, 2009.  If Plaintiffs choose not to file an amended complaint, the Court shall dismiss all claims with prejudice without further notice to the Plaintiffs.  If Plaintiffs choose to amend, they must identify each named Defendants' role in the alleged scheme underlying their claims, must allege facts to support any allegations that any of the named

Defendants are vicariously liable for the actions of another named Defendant, and must satisfy Rule 9(b)'s requirements.  The Court also reminds Plaintiffs and Plaintiffs' counsel of their Rule 11 obligations.

11.    The initial case management conference set for August 21, 2009 is CONTINUED to September 25, 2009 at 1:30 p.m.  A joint case management conference statement shall be due on or before September 18, 2009.

**IT IS SO ORDERED.**

Dated: July 27, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

25